# Supreme Court of Texas

No. 21-1097

American Honda Motor Co., Inc.,

*Petitioner*,

v.

Sarah Milburn,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

JUSTICE BLACKLOCK, joined by Justice Busby, concurring.

I agree with the dissent that the Legislature has left it to Texas juries, not federal bureaucrats, to determine in products-liability cases whether "federal safety standards or regulations applicable to [a] product were inadequate to protect the public from unreasonable risks of injury or damage." TEX. CIV. PRAC. & REM. CODE § 82.008(b)(1). Under this statute, the fact finder has wide latitude to answer an unusual question, one that is neither a conventional question of fact nor a conventional question of law. Whether a federal regulation is "adequate" or "inadequate" to protect the public is really a question of

policy and politics—which makes judicial application of this statute somewhat confounding.

I see no way to separate the question of a regulation's "adequacy" from the political value judgments of the person answering the question. A very lenient seat-belt-design regulation might look perfectly adequate to a juror who values liberty and lowering costs much more highly than he values safety. For decades, American cars were steel death traps compared to today's cars, and there were few seat-belt laws at all, much less federal regulation of the minute details of their design. Cars were more dangerous, but they were also cheaper and simpler. The world kept turning. Our government later decided to impose greater regulation in the name of safety, but many jurors might believe that the era of little or no regulation was perfectly "adequate."

On the other hand, a juror who values safety much more highly than liberty might conclude that any regulation that does not go as far as reasonably possible to ensure maximum safety for every passenger is inadequate—even if imposing the regulation would heighten costs and inconvenience drivers. This juror might conclude that a seat-belt-design regulation is not "adequate to protect the public" unless the car is prevented from moving if there is weight on the seat but the seat belt is not correctly fastened. Such a regulation might have protected Ms. Milburn and many others. But it also might impose significant costs on manufacturers and consumers, and it would surely be an impractical inconvenience for many drivers. How do we balance those competing values? One juror might call this strict regulation the product of a

2

nanny state gone wild, while another juror might say we are crazy not to do it if it saves one life. Most jurors would fall somewhere in between.

Are any of these hypothetical jurors wrong? The only way for a court to say so would be for the court to make political value judgments of its own about the proper way to balance the competing interests at stake. For better or worse, when it comes to seat belts, such political value judgments are generally entrusted to the federal government's National Highway Traffic Safety Administration. The federal agency's balancing of the myriad values and interests at play results in a promulgated federal regulation. That regulation affects products-liability litigation in Texas, because the Legislature has created a rebuttable presumption that a vehicle manufacturer is not liable if it complied with the applicable federal standards. *Id.* § 82.008(a).

The presumption is rebutted, however, if the "federal safety standards or regulations applicable to [a] product were inadequate to protect the public from unreasonable risks of injury or damage." *Id.* § 82.008(b)(1). For the foregoing reasons, I understand this provision to authorize the fact finder to substitute his own political judgment about the regulation's "adequacy" for that of NHTSA. It feels odd to call this essentially political judgment a "fact question," but that seems to be the statutory design, and so courts must apply it as best we can. I therefore agree with the dissent that a jury has very wide latitude to disagree with the federal agency's decision and, on that basis alone, to override the presumption of non-liability. Assuming the jury has been given a sufficient evidentiary predicate by which to second-guess the agency's

3

decision (more on that below), a jury's disagreement with the agency's decision should be essentially unreviewable. A court cannot second-guess a jury's disagreement with a federal agency's value-laden policy judgments without imposing the court's own value-laden policy judgments. I see nothing in this statute that would authorize a court to do so.

Despite my agreement with many of the broad strokes argued by the dissent, I nevertheless concur in the Court's judgment and its opinion for two reasons. First, unlike the dissent, I do not read the Court's opinion to limit the grounds on which a plaintiff can demonstrate a regulation's inadequacy. *See post* at 3–4 (Devine, J., dissenting) (suggesting that the Court leaves open only two ways of demonstrating regulatory inadequacy). The Court does say that regulatory inadequacy can be shown by poking holes in the agency's decision-making process or by showing that new information has come to light since the regulation was enacted. *Ante* at 28–29, 33–34. But the Court never says these are the only two ways to rebut the presumption. Instead, the Court acknowledges that a plaintiff might argue simply that the federal agency "got it wrong"—that is, that the agency did an "inadequate" job balancing the many competing values and interests at stake, and the jury should therefore disagree with the agency's judgments and override the presumption. *Id.* at 30, 34 n.23. I read the Court's opinion to correctly leave this line of argument open, and I would not join the Court's opinion unless it did so.

Second, I agree with the Court on the following crucial point: "Absent a comprehensive review of the various factors and tradeoffs

4

NHTSA considered in adopting [the] safety standard, as a general matter neither we nor a jury can deem a particular regulation 'inadequate' to prevent an unreasonable risk of harm to the public as a whole." *Id.* at 32–33 (footnotes omitted). Many, many considerations go into the creation of a federal regulation of this nature, and passenger safety is just one of them. Other obvious considerations are cost, convenience, and practicality. Surely there are others. A fact finder cannot validly judge a federal agency's balancing of these values unless he knows something about how the regulatory process works and has a sense of the many conflicting considerations and competing values— safety just one among them—that contributed to the promulgated regulation.

Honda's lead argument in this Court is not that the jury has no authority to conclude that the federal agency "got it wrong." Instead, Honda's argument is that we cannot validly ask a jury to say whether a federal agency "got it wrong" unless the jury has been informed about the regulatory process and the many competing considerations it entails. As Honda puts it, "a qualified regulatory expert would need to explain why, in the context of the entire regulatory history and the delicate balance between absolute safety and commercial feasibility, the agency's determination was . . . 'inadequate.'" Pet. Brief at 18. I agree.

Here, the plaintiff's two experts focused on establishing the defectiveness of the seat belt's design. Neither expert aided the jury in understanding the complex landscape confronting NHTSA when it made its decision. And without such testimony, there is no evidentiary basis

5

for a finding that, all things considered, the regulation is "inadequate to protect the public." TEX. CIV. PRAC. & REM. CODE § 82.008(b)(1).

By focusing on the regulation's failure to promote passenger safety as strongly as it could have, the plaintiff's experts did essentially the opposite of what was required. They encouraged the jury to condemn the regulation based on the singular consideration of passenger safety. Their burden instead was to convince the jury that, balancing passenger safety with the many other relevant factors bearing on its decision, NHTSA's regulation was, all things considered, "inadequate." Because the plaintiff never presented such a case to the jury despite Honda's consistent argument that this was required, I agree with the Court that the jury's finding of regulatory inadequacy cannot stand.

With these points noted, I respectfully concur.

James D. Blacklock
Justice

**OPINION FILED:** June 28, 2024

6